## JONES, Administrator, v. READ et ux.

Though it be stated in the advertisement of a judicial sale of the property of a succession, that an act of sale will be executed before the parish judge, the mere omission to execute such an act, there being no proof that its execution was demanded or refused, will not release a purchaser who has been in possession of the property since the date of the sale. The adjudication made and recorded by the judge, or clerk, gave a complete title to the purchaser. C. C. 2601.

---

Where a purchaser takes possession of property, without making any objection to the title on account of a mortgage existing on it, or requiring that it should be raised, the existence of the mortgage will not authorize him to refuse to pay the price. He can demand nothing more than a bond of indemnity against future disturbance. C. C. 2535.

Where a record has been offered in evidence to prove a particular fact, it cannot be used by the opposite party to establish another fact not alleged in the pleadings. To allow it, would be to expose the party by whom the record was first offered to surprize.

A husband cannot be made liable personally for the price of property purchased by him in the name, and on account of his wife, where she is separated in property.

Real estate belonging to a succession was adjudicated, at a judicial sale, to a person, for account of his wife, who was separated in property, for a price, payable partly in cash, and partly in notes secured by mortgage on the property. Subsequently, at the instance of the husband, the mortgagee took out an order of seizure and sale, and the property was adjudicated to him for a price much less than that for which it was sold on the first exposure. In an action by the administrator against the husband and wife, to recover a balance of the price due under the first sale: *Held*, that the husband, being cognizant of the first sale, of the vendor's privilege, of the reservation of a mortgage by the terms of the adjudication, of his wife's default, and having instigated the eviction by which the title was transferred to him at a price greatly below the original cost, and all the circumstances of the case showing a want of good faith on the part of the defendants, that the second sale, under a prior and superior incumbrance, which, if to an innocent third person, would have divested the plaintiff of all right, cannot shield the property in the hands of the husband; and that judgment should be rendered against the wife, with a privilege on the property.

APPEAL from the District Court of the First District, *Buchanan*, J. The judgment of the court was pronounced by

SLIDELL, J. The succession of *Milling* being proprietor of certain real estate in the parish of Jefferson and certain shares of Citizens' Bank stock secured thereby, a sale thereof was made under order of the Court of Probates, and the land and stock adjudicated " to *Read*, for account of his wife, at the total price of $5,500, to wit, $4,750 for the landed property, and $750 for the premium on the shares of the Citizens' Bank. The terms of sale were $294 37½ cash, and the balance of the adjudication to be paid by the purchaser's assuming the payment of $3,375 due on stock to the Citizens' Bank, the purchaser having the privilege of paying off said amount with interest, by instalments of one-fiftieth, according to the charter of the bank, and the balance, if any there be, on a credit of one year from the day of the sale, in notes endorsed to the satisfaction of the curator, and secured by mortgage until final payment. The shares of the Citizens' Bank payable in cash."

It appears that, at the foot of the judicial advertisement which preceded this sale, it was said that acts of sale should be passed, at the expense of the purchaser, before the parish judge.

Immediately after the adjudication, but whether with or without the assent or intervention of the administrator, does not appear, the defendant and his wife took possession of the landed property, enjoyed its fruits, and hired it out to sundry persons, from whom the husband collected the rents. The leases, which seem to have been verbal, were made by the husband, and the receipts for rent which have been produced are signed by the husband. It would seem that the $294 37½ the cash payment for the land, was made.

The adjudication was made on the 12th March, 1842. In 1843, a rule in the matter of *Milling's* succession was taken upon the defendants, to show cause why the real estate and bank stock should not be resold at the purchaser's risk and expense, on the ground that she had failed and refused to comply with the terms of sale. This order to shew cause seems not to have been acted upon,

JONES
v.
READ.

nor does it appear when it was served upon the defendants. But its existence evidently came to the knowledge of the defendants, as will hereafter appear. It is not shown that, at any time, the defendants called upon the administrator for the execution of a notarial act of sale before the parish judge.

In the year 1843, *Lewis A. Read* called upon the cashier of the Citizens' Bank, and seems, instead of paying the debt to the bank, to have instigated the bank to seize and sell the property, alleging that he had purchased, and that the seller had not been able to make him a title. Accordingly the bank, in the fall of `1843, obtained executory process upon their mortgage debt, seized the land and stock, and they were adjudicated to the defendant, *Read*, for $3,750. Only a small portion however was paid in cash, the bank allowing *Read* to give a new note as stockholder, on the usual terms, on paying up the arrears, pursuant to the charter. Soon after, to wit, in December, 1843, the administrator brought the present suit against *Read* and wife, to recover the sum of $1,830 62, the portion of price unpaid.

The defendants first pleaded, by way of exception, the pendency of the rule in the Court of 'Probates above referred to. The administrator then discontinued the rule. The exception was then tried and overruled, and the defendants answered separately. The husband filed a general denial. The wife joined to her plea of general denial a special plea, that the property had been adjudicated to her through the agency of her husband; that, at the time of the sale and for months afterwards, she had been willing and ready to comply with the terms of the adjudication and had frequently demanded a title from the plaintiff, but that he had neglected and failed to convey a valid and unincumbered title; that she had thus lost the opportunity of selling the stock at a profit, and the other advantages of her purchase. She also pleaded the seizure and sale by the Citizens' Bank. At the trial, the facts above stated appeared. It also appeared that, since the first sale, the property had depreciated in value, and that, by their marriage contract, the wife was separated in property from the husband. The jury found a verdict for the plaintiff, and the defendants have appealed.

It is argued that this action cannot be maintained, because the plaintiff never fulfilled his contract, by tendering an act of sale before the parish judge.

Our Code declares that, " the adjudication made and recorded by the judge, or clerk of the court, is a complete title to the purchaser, and needs not be followed by an act passed before a notary." Art. 2601.

But it is said that, in the case of *Berthoud* v. *Unrich*, 9 La. 180, it was held that, if in a probate sale it be advertised that a notarial deed will be given, and such a deed be refused, the court will not entertain a rule to show cause why the property should not be resold at the purchaser's expense. The circumstances of that case were very different from those now presented. There the purchaser had not entered into possession, and it would seem that the deed had been refused. Here no demand, nor denial of an act of sale, has been proved. The purchaser has received the possession, and thus the essential obligation of the seller has been fulfilled.

In *Berthoud's* case, Judge Martin referred to the article of the Code, and said that, " the notarial act was not necessary, nor essential to the perfection of the purchaser's title." It is clear that the failure of the administrator is not in a matter of substance. The notarial act might be a convenient document, but it could have given no additional legal force to the title. As a matter formal, and not substantial, it may well be considered as waived by the entering into possession. Equity forbids that a purchaser should be permitted to take advantage of such

a circumstance, when the certificate of adjudication, and the possession and enjoyment of the property, gave her the full benefit of the contract.

That the defendant, *Eleanor Read*, has been evicted by the seizure and sale at the suit of the Citizens' Bank, is no defence, because that eviction was the consequence of her own default. By the terms of the adjudication, and by her entry into possession, she expressly assumed and became bound to pay the Citizens' Bank. Not having done so, she cannot take advantage of her own wrong. See Civil Code, art. 2478.

The defendants next contend that, at the date of this sale, the property was incumbered by mortgages created by an antecedent proprietor, which the Probate Court was incompetent to discharge. The certificate of the recorder shows two incumbrances created by antecedent proprietors, the mortgage to the Citizens' Bank, and an incumbrance for the price created by an antecedent proprietor and purchaser. The former was expressly assumed by *Eleanor Read*, and cannot therefore be the subject of objection. As to the latter it was for two notes: as to one of these notes, the mortgage appears to be still outstanding; the other is to be considered as extinguished by presumption of law, a period of more than five years from its maturity having expired before the seizure of the Citizens' Bank.

Here again it is to be observed that the purchaser entered into possession, without any discussion about the title, or any demand that this incumbrance should be raised. When such a course is pursued, the purchaser, upon being sued for the price, can certainly demand no greater relief than a bond of indemnity against future disturbance. Civil Code, art. 2535.

If then the defendant, *Eleanor Read*, still remained the owner of this property, the plaintiff would be entitled to a judgment, conditioned that no execution should issue till he had given her a bond of indemnity, to hold her harmless against the outstanding incumbrances in favor of this antecedent vendor, or those who have become subrogated to his rights. But as *Eleanor Read* is no longer the owner, having been evicted by the Citizens' Bank in consequence of her own default, a bond of indemnity would be of no possible benefit to her. *Lex neminem cogit ad vana.*

It is next urged that a suit for this same property is pending in the Circuit Court of the United States, in which the heirs of *Poultney* are plaintiffs, and *Philip Harty*, an antecedent proprietor and *Milling's* vendor, is defendant. The existence of this suit was not pleaded in the answer of the defendants, and the objection is founded upon what appears in the record of the suit of *Wallace & Co.* v. *Harty*, brought on a mortgage note, which record the plaintiff had offered to establish the extinguishment of an antecedent incumbrance by payment, after the defendant had offered a mortgage certificate shewing that this incumbrance still existed of record. This record thus offered by the plaintiff cannot be thus invoked by the defendant. To permit this evidence offered by the plaintiff for a particular purpose, to be used against him to establish another fact, not set forth in the pleadings, would manifestly lead to surprise and hardship. If the defendants had reoffered this record, or had even given the plaintiff notice that they should rely upon it in argument to show a disturbance of the title, the plaintiff would then have had an opportunity of excepting to its admissibility, and, if his exceptions were overruled, of offering further evidence, if any existed, relevant to the question of disturbance. Moreover it does not appear by this record, nor has it been proved *aliunde*, that the *Poultney* suit was still pend-

ing when the present case was tried. See also what is said above as to giving security.

It is next urged that the defendant, *Lewis A. Read*, is not personally liable for this debt, his wife being separated in property, and the purchase having been expressly made for her account. The marriage contract and the adjudication are referred to in support of this position. We consider the objection well taken, and the judgment of the court below must be corrected accordingly.

It is next urged that the judgment for the purchase money, was improperly rendered with privilege on the property. The defendant, *Lewis A. Read*, who became the purchaser at the judicial sale of the Citizens' Bank, was not a co-purchaser with his wife at the original sale; but he was fully cognizant of that purchase, of the vendor's privilege, and of the express reservation of the mortgage by the terms of the adjudication. He was fully cognizant of his wife's default, and he appears to have instigated the eviction by which the title has been transferred from her name to his own, at a price greatly below the original price. Under all the circumstances of this case, which it is unnecessary again to particularize, we think there has been a want of good faith on the part of these defendants; and this second sale, under a superior and antecedent incumbrance, which if made to an innocent third person, would have been a complete divestiture of the rights of the plaintiff, is unavailing to shield the property in the hands of the husband.

Lastly, interest has been incorrectly allowed on the whole amount, from the 12th March, 1842. °It should be allowed on $700, the unpaid balance of the cash price, from the date of the judicial demand, December 23, 1843; and on $1130 62½, the portion of the price for which the credit of one year was stipulated, from the 15th day of March, 1843, at which date, if the purchaser had given her note, it would have fallen due.

It is therefore decreed that, the judgment of the District Court be reversed; and it is further decreed that there be judgment in favor of the plaintiff, *William Jones*, administrator of the succession of *Robert L. Milling*, deceased, against the defendant, *Eleanor Phillips*, wife of *Lewis A. Read*, for the sum of $1830 62,. with interest on $700, part thereof, from December 23, 1843, until paid, and on $1130 62½, the other part thereof, from the 15th March, 1843, till paid, with special mortgage and vendor's privilege respectively upon the real estate and stock described in the *procès verbal* of the parish judge to the petition annexed, and with costs in the court below, those of this appeal to be borne by the plaintiff.

*Michel*, for the plaintiff. *Bartlette*, for the appellants.